UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ESTATE OF PAUL DANIELS, by Personal Representative Kay Stover, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:20-cv-02280-JRS-MJD |
| CITY OF INDIANAPOLIS, et al., | ) ) | |
| Defendants. | ) ) | |

## ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

This matter comes before the Court on Plaintiff's Motion to Compel Discovery Responses. [Dkt. 52.] Plaintiff seeks an order compelling Defendants to respond fully to certain interrogatories and requests for production. For the reasons and to the extent set forth below, the Court **GRANTS IN PART** and **DENIES AS MOOT IN PART** Plaintiff's Motion to Compel.

## I.  Background

On September 1, 2018, Paul Daniels ("the Decedent") died while in the custody of the Indianapolis Metropolitan Police Department ("IMPD"). [Dkt. 1 at 1.] The Estate of Paul Daniels, by Personal Representative Kay Stover, ("Plaintiff") filed the Complaint in this case against IMPD Officers Stephen Guynn Jr., George Rossman, and Eli Raisovich ("Defendant Officers"), the City of Indianapolis, and IMPD on August 31, 2020. [Dkt. 1.] Plaintiff asserts a *Monell* claim against the City of Indianapolis and one count of excessive force against each of the Defendant Officers pursuant to 42 U.S.C. § 1983. [Dkt. 1.] In particular, Plaintiff alleges that Defendants "used excessive force to arrest and restrain" the Decedent when they held the

Decedent "face down in a prone position and plac[ed] pressure on his upper body." [Dkt. 1 at 4.] This, according to Plaintiff, caused the Decedent "to suffer from positional asphyxia, leading to unconsciousness and death." [Dkt. 1 at 4.]

The issue at hand is a discovery dispute. On August 11, 2021, the undersigned conducted an informal discovery conference to discuss Plaintiff's issues with Defendants' responses and objections to certain interrogatories and requests for production. [Dkt. 49.] The Court ultimately authorized Plaintiff "to file a motion to compel Defendants' responses to Plaintiff's discovery requests if the parties are unable to resolve their dispute with the guidance provided by the Court." [Dkt. 49.] The parties were apparently unable to do so, and Plaintiff filed the instant Motion to Compel on September 1, 2021. [Dkt. 52.] Plaintiff asserts that, despite the Court's guidance at the discovery conference, no supplemental responses had been received from Defendants at the time of filing—15 business days after the conference. [Dkt. 53 at 2.]

## II.  Applicable Standard

Under the Federal Rules of Civil Procedure, litigants are afforded liberal discovery. As amended in 2015, Rule 26(b)(1) outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of admissibility.[1] Fed. R. Civ. P. 26(b)(1). Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[1] The 2015 amendment removed the language that defined relevancy as that "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26 Committee Notes on Rules—2015 Amendment.

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

After making a good faith effort to resolve discovery disputes without court intervention, a party may move to compel discovery if its opponent has provided "an evasive or incomplete disclosure, answer, or response," or otherwise failed or refused to respond to discovery requests. Fed. R. Civ. P. 37(a)(1)-(4). A motion to compel brought in the Southern District of Indiana "must contain a statement setting forth the efforts taken to resolve the dispute, containing the date, time, and place of any discovery conference and the names of all participating parties." Southern Dist. Ind. Local R. 37-1(b). The party objecting to the discovery then bears the burden of showing the specific reasons why each particular request is improper. *Cunningham v. Smithkline Ceecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (citing *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253, 254 (S.D. Ind. 2002)); *see Barker v. Kapsch Trafficcom USA, Inc.*, 2020 WL 3618945, at *1 (S.D. Ind. July 1, 2020) ("When a party raises objections to discovery requests, the objecting party bears the burden to explain **precisely why** its objections are proper given the broad construction of the federal discovery rules.") (emphasis in original) (citing *In re Aircrash Disaster Near Roselawn, Inc.*, 172 F.R.D. 295, 307 (N.D. Ill. 1997)).

Importantly, district courts possess broad discretion in resolving discovery disputes. *Conroy v. Select Med. Corp.*, 307 F. Supp. 3d 896, 901–02 (S.D. Ind. 2018) (collecting cases). Part of this discretion involves limiting requests where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Courts may also limit discovery where the objecting party shows "that the information is not reasonably accessible because of

undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Nonetheless, "courts commonly look unfavorably upon significant restrictions placed upon the discovery process." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) (citing *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001)).

### III.   Discussion

Plaintiff asks the Court to compel Defendants to supplement their discovery responses, primarily because Defendants either refused to provide responsive information or were unclear as to whether all responsive materials had been produced. In addition to making pages of objections to each discovery request at issue, Defendants object to the motion to compel on the grounds that Plaintiff "did not engage in any meaningful attempt to meet and confer before filing its motion" and "Plaintiff has not met its initial burden of establishing that the information sought is relevant." [Dkt. 59 at 1.] Defendants' assertion that Plaintiff did not meet and confer is meritless. As stated in Plaintiff's motion, "[a]fter emails and communications back and forth, an in person discovery conference was held between party counsel on August 10, 2021 at the offices of Counsel for Defendants per Southern District of Indiana's Local Rule 37-1(a)."[2] [Dkt. 52-1 at 2.] Defendants' objections that Plaintiff did not attempt to meet and confer, as well as Defendants' objections that Plaintiff's motion does not conform with Local Rule 37-1, are therefore baseless.

---

[2] In their opposition to Plaintiff's Motion to Compel, Defendants take issue with Plaintiff's counsel's cooperation at the August 10 meet and confer. *See* [Dkt. 59 at 4]. Defendants did not raise this issue at the discovery conference. *See* [Dkt. 49 at 1] (minute entry, noting that "after a meet a confer, the parties partially resolved their discovery dispute"). Since the undersigned concluded the conference by authorizing Plaintiff to file a motion to compel, Defendants' concerns with the validity of the meet and confer are without merit.

Additionally, despite Defendants' contentions otherwise, Plaintiff has met her relevancy burden. "Because the purpose of discovery is to help 'define and clarify the issues,' relevance must be broadly construed." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 2021 WL 3186959, at *3 (S.D. Ill. July 28, 2021) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (superseded by statute on other grounds)). Therefore, establishing relevancy is not a high bar, and where "relevance is in doubt, courts should err on the side of permissive discovery." *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004) (citation omitted). Indeed, courts "must be cognizant of the 'strong public policy in favor of disclosure of relevant materials.'" *Senior Lifestyle Corporation v. Key Benefit Administrators, Inc.*, 2018 WL 9916128, at *2 (S.D. Ind. July 6, 2018) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681, n.11 (7th Cir. 2002)). Thus, "[w]hen the discovery sought appears relevant, the party opposing the discovery bears the burden of proof to establish the discovery's lack of relevance by demonstrating that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gumwood Hp Shopping v. Simon Prop. Group*, 2014 WL 12780341, at *2 (N.D. Ind. June 25, 2014) (citing *Jones v. Hamilton Cnty. Sheriff's Dep't*, 2003 WL 21383332, at *3 (S.D. Ind. June 12, 2003)). This burden cannot be met by "a reflexive invocation" that the requested discovery is irrelevant without further elaboration. *Burkybile v. Mitsubishi Motors, Corp.*, 2006 WL 2325506, at *6 (N.D. Ill. Aug. 2, 2006). As illustrated in more detail below, the Court finds that each of Plaintiff's outstanding discovery requests are relevant under Federal Rule of Civil Procedure 26; it is Defendants who have not met their burden in this regard.

Having dispensed with Defendants' overarching arguments, the Court now addresses each disputed request for production and interrogatory in turn.

A.  **Plaintiff's Requests for Production**

There are nine requests for production at issue. Requests for production are governed by Federal Rule of Civil Procedure 34, which provides that requests "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). The responding party must then "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Any objections must also "state whether any responsive materials are being withheld on the basis of that objection," but "[a]n objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

1.  **First Request No. 4**

Plaintiff 's First Request for Production No. 4 seeks "[a]ny document, material, or information furnished to the Defendants' employees, including, but not limited to, training material, rules and regulations of conduct, guidelines, procedures, policies, memorandums, instructions and/or warnings." [Dkt. 52-2 at 3.] Plaintiff moves to compel because "Defendants have not produced any significant training materials." [Dkt. 52-1 at 2.]

In support of their objections that this request is ambiguous, vague, not limited in time and scope, overly broad, and unduly burdensome, Defendants argue that, because "the City employs thousands of people," they are "unable to identify which employees are being referenced," and "[i]t is impossible to identify all documents, material, and information that have ever been furnished to the City's employees." [Dkt. 52-2 at 3.] However, "[t]o the extent it might apply to employees other than the Defendants, Plaintiff agreed at the Magistrate discovery conference to limit the request to the Defendant [Officers]." [Dkt. 63 at 4.] This limitation

additionally implies the temporal scope of the request as being during the time that Defendant Officers have been employed by IMPD.

Nonetheless, Defendants further object on ambiguity and vagueness grounds because, they argue, Plaintiff fails "to describe with reasonable particularity each item or category of items to be inspected" under Federal Rule of Civil Procedure 34(b)(1). [Dkt. 59 at 9.] "The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not.'" *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, 2007 WL 1164970, at *6 (N.D. Ind. Apr. 18, 2007) (citing *Bruggerman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004)). Here, Plaintiff attempts to put Defendants on such notice by specifying that this request includes "training material, rules and regulations of conduct, guidelines, procedures, policies, memorandums, instructions and/or warnings." Still, the beginning of the request—"[a]ny document, material, or information furnished to the Defendants' employees,"—is exceedingly broad and Defendants' overbreadth objection is well-taken. The Court thus narrows First Request No. 4 to the enumerated categories of documents.

Defendants also assert that the "documents requested are equally available to Plaintiff" because IMPD produced documents in its possession regarding the training of Defendant Officers, a copy of the IMPD General Orders that were in effect on September 1, 2018, and the IMPD Rules and Regulations in effect on September 1, 2018. [Dkt. 59 at 10.] As Plaintiff notes, however, the documents produced do not necessarily cover Plaintiff's entire request, making Defendants' response incomplete.

Additionally, Defendants object that First Request No. 4 is "not proportional to the needs of the case" and "exceeds the scope of permissible discovery because it calls for the production of massive amounts of documents that are not relevant to any party's claim or defense." [Dkt. 52-

2 at 4.] As narrowed, however, the information sought is, as Plaintiff argues, "relevant to Plaintiff's *Monell* claim, as well as establishing the Defendant officers' knowledge of dangers and risks inherent in utilizing improper police methods." [Dkt. 63 at 5.]

Defendants also object that "this request calls for information that is protected under the attorney client communication privilege, the attorney work product privilege, the deliberative process privilege, and other privileges." [Dkt. 52-2 at 4.] Defendants fail to articulate precisely how this request seeks privileged information, however, and thus their privilege objection is overruled. *Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered."). Moreover, Rule 26 requires parties who object to discovery based on privilege to produce a privilege log in which they "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," which Defendants did not do. Fed. R. Civ. P. 26(b)(5)(A).

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Plaintiff's First Request for Production No. 4, narrowed as follows: any training materials, rules and regulations of conduct, guidelines, procedures, policies, memorandums, instructions and/or warnings furnished by the City/IMPD to the Defendant Officers. Defendants shall produce all additional documents responsive to that request **within 14 days of this Order**..

## 2. First Request No. 8

Plaintiff's First Request for Production No. 8 seeks "[a]ny document, record, or demonstrative exhibit Defendants may bring as evidence at trial." [Dkt. 52-2 at 9.] Plaintiff

moves to compel because "it is unclear whether all such evidence has been produced." [Dkt. 52-1 at 3.]

Defendants initially object to First Request No. 8 on the grounds that it is ambiguous because "the City is unable to identify all documents that may be responsive to this request." [Dkt. 52-2 at 9.] In their opposition to Plaintiff's motion, Defendants elaborate that, "[s]ince Defendants will not have a burden of proof at trial, it [sic] must know what evidence Plaintiff will introduce before it [sic] may determine what documents, records, or demonstrative exhibits it will introduce at trial." [Dkt. 59 at 11.] This objection is certainly strange, given that Defendants were already required to produce all documents in their possession that may be used to support its claims or defenses as part of their initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(ii). *See Barker*, 2020 WL 3618945, at *7.

For this reason, Plaintiff's Motion to Compel is **GRANTED** with respect to Plaintiff's First Request for Production No. 8 to the extent that Defendants shall produce every "document, record, or demonstrative exhibit Defendants may bring as evidence at trial" of which they are currently aware. If Defendants determine they have produced all responsive documents, they are instructed to affirmatively state so in their supplemental response. Defendants are reminded of their obligation to seasonably supplement this response as additional responsive documents are identified. Fed. R. Civ. P. 26(e).[3]

---

[3] Defendants also object "because this request seeks documents that are protected under the attorney client communication privilege and work product privilege." [Dkt. 52-2 at 10.]  In the rather unlikely event that Defendants determine that they might utilize privileged documents at trial, which would necessarily require waiver of the privilege with regard to those documents and all other documents regarding the same subject matter, they are reminded of their obligation to identify such in a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A).

### 3. First Request No. 11

Plaintiff's First Request for Production No. 11 seeks "[c]opies of all training materials given to Officer Guynn, Officer Raisovich, and/or Officer Rossman regarding positional asphyxia, mental health." [Dkt. 52-2 at 12.] Plaintiff moves to compel because Defendants "stat[e] training provided in the police academy," but provide "few actual training materials." [Dkt. 52-1 at 2, 3.]

First Request No. 11 appears to seek a subset of the information already requested in Plaintiff's First Request No. 4, since "any training materials, rules, and regulations of conduct, guidelines, procedures, policies memorandums, instructions and/or warnings furnished by the City/IMPD to the Defendant Officers" logically would include specific training materials "regarding positional asphyxia [and] mental health." Because the Court narrowed First Request No. 4, there should be no ambiguity that it must include the information sought in Request No. 11, and Defendants will not be compelled to provide duplicative responses. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (providing that the court must limit discovery where "the discovery sought is unreasonably cumulative or duplicative"). Plaintiff's Motion to Compel is therefore **DENIED AS MOOT** with respect to Plaintiff's First Request for Production No. 11.

### 4. First Request No. 12

Plaintiff's First Request for Production No. 12 seeks "[c]opies of all performance reviews for Officer Guynn, Officer Raisovich, and Officer Rossman." [Dkt. 52-2 at 13.] Plaintiff moves to compel because it is "unclear if this answer is comprehensive." [Dkt. 52-1 at 3.]

Defendants initially objected, without any elaboration whatsoever, that this request is ambiguous, overly broad, unduly burdensome, not limited in time and scope, not relevant, and

not within Defendants' control. [Dkt. 52-2 at 13.] These arguments are therefore overruled as

boilerplate objections. *Novelty,* 265 F.R.D. at 375.

"Subject to and without waiving these objections," Defendants provided a partial answer.

[Dkt. 52-2 at 13.]

> Defendants produced five performance evaluations when responding to Plaintiff's second request for production. This production included the 2018 and 2020 performance evaluations of Officers Guynn and Rossman. It also included the 2018 performance evaluation of Officer Raisovich. These evaluations show how Defendant Officers were evaluated during the year that Plaintiff's claims arose and how two of these officers were evaluated two years later.

[Dkt. 59 at 13.] In their opposition to Plaintiff's motion, Defendants state that they "provided all

responsive documents in its possession, custody, and control," and "do not have additional

responsive documents." [Dkt. 59 at 13.] This unequivocal assertion that Defendants "do not have

additional responsive documents," means that this discovery request is no longer in dispute. For

this reason, Plaintiff's Motion to Compel with respect to Plaintiff's First Request for Production

No. 12 is **DENIED AS MOOT**.

### 5.  First Request No. 13

Plaintiff's First Request for Production No. 13 seeks "[c]opies of all citizen complaints,

discipline, internal affairs investigations, and use of force investigations for Officer Guynn,

Officer Raisovich, and Officer Rossman." [Dkt. 52-2 at 14.] Plaintiff moves to compel because it

is unclear if Defendants' answer is comprehensive. [Dkt. 52-1 at 3.]

Defendants initially object on the grounds that the request is overly broad, unduly

burdensome, not relevant to any party's claims or defenses, and seeks documents not within

Defendants' control. [Dkt. 52-2 at 13.] Defendants, yet again, do not provide any explanation to

support these objections, however, and so they are overruled as boilerplate arguments. *Novelty,* 265 F.R.D. at 375.

In their opposition to Plaintiff's motion, Defendants elaborate that First Request No. 12 is ambiguous and unlimited in time and scope because "it is not clear what would constitute a copy of an investigation." [Dkt. 59 at 14.] Such objection, along with several other spurious objections and misrepresentations made by Defendants as discussed herein, come dangerously close to being sanctionably improper and counsel for Defendants is cautioned to avoid such conduct in the future. Considering Defendants are engaged in the business of law enforcement, they should be more than capable of determining "what would constitute a copy of an investigation." *See Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC,* 244 F.R.D. 614, 618–19 (D. Colo. 2007) ("discovery requests must be given a reasonable construction, rather than straining to find ambiguity where there is none.") (referencing *King-Hardy v. Bloomfield Bd. of Educ.,* 2002 WL 32506294, at *5 (D. Conn. Dec. 8, 2002)); *see also Solutions Team v. Oak St. Health, MSO, LLC,* 2021 WL 3022324, at *4 (N.D. Ill. July 16, 2021) ("'A party responding to a discovery request should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests.'") (citing *McKellips v. Kumho Tire Co.,* 305 F.R.D. 655, 679 (D. Kan. 2015)).

"Subject to and without waiving these objections," Defendants provided a partial answer. [Dkt. 52-2 at 13.]

> Defendants produced complaints made against Defendant Officers when responding to Plaintiff's second request for production days earlier. They also produced a document concerning discipline Defendant Officers received. And they produced a document showing coaching Officer Rossman received. Defendants then produced documents gathered during the internal affairs investigation of Daniels's in-custody death on September 1, 2018.

[Dkt. 59 at 14.] In their opposition to Plaintiff's motion, Defendants state they have "produced responsive documents in their possession, custody and control that are proportional to Plaintiff's needs." [Dkt. 59 at 15.] But Defendants also state that they "are not withholding documents under an objection. Instead, they are objecting because it is impossible to determine what documents are responsive at this stage." [Dkt. 59 at 15.] The Court disagrees; the request is not ambiguous, and Plaintiff is entitled to a full and complete response to it. If there are any additional responsive documents—for example, if any of the Defendant Officers have been the subject of any other internal affairs investigations or use of force investigations—Defendants must produce them.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Plaintiff's First Request for Production No. 13. Defendants shall provide a complete and unequivocal response to the request **within 14 days of this Order**.

### 6. Second Request No. 1

Plaintiff's Second Request for Production No. 1 seeks "[a]ny [Firearms] Review board reports, internal investigations, conduct reports, evaluations, write ups, suspensions, demerits, and citizen's complaints for Stephen Guynn Jr., George Rossman, Eli Raisovich." [Dkt. 52-3 at 1.] Plaintiff moves to compel because it is unclear whether Defendants' response is comprehensive. [Dkt. 52-1 at 3.]

Defendants first object to Second Request No. 1 as ambiguous because it "uses terminology that Defendants do not use to describe their documents such as conduct reports, demerits, write ups, internal investigations, and [Firearms] Review board reports." [Dkt. 52-3 at 1.] Defendants are reminded that their "obligation to construe Plaintiff's discovery requests in a reasonable manner" is ongoing. *Cache La Poudre Feeds*, 244 F.R.D. at 618. Even where a

request appears ambiguous or overly broad, parties are still generally obligated "to respond to the extent the interrogatory or request can be narrowed to an appropriate scope." *Norwood v. UPS*, 2020 WL 2615763, at *2 (D. Kans. May 22, 2020) (citing *Moses v. Halstead*, 236 F.R.D. 667, 672–73 (D. Kan. 2006)); Fed. R. Civ. P. 34(b). Also, Defendants argue that the request is overly broad and unduly burdensome because it is not limited in time and scope, thereby preventing Defendants from identifying "all documents that may be responsive." [Dkt. 52-3 at 1.] Plaintiff clarifies, however, that the request is "limited to the time the Defendant officers were employed by the City of Indianapolis." [Dkt. 63 at 9.]

Defendants assert that the request is particularly burdensome because "defendants would incur expense when reviewing the City's files, identifying responsive documents, and producing them," and that "[t]his expense will outweigh the probative value that these documents would have for any party." [Dkt. 52-3 at 2.] However, "[a]ll discovery is burdensome," *Vera Bradley Designs, Inc. v. Aixin Li*, 2021 WL 1088323, at *2 (N.D. Ill. Mar. 22, 2021), and Defendants have not provided any reason as to why this request is unduly so. Indeed, the Court assumes that Defendants are not suggesting that Defendants have such an extensive disciplinary history that reviewing such record constitutes an undue burden.

Defendants further object that Second Request No. 1 "requests documents that are not relevant to any party's claim or defense and that are not proportional to the needs of the case." [Dkt. 52-3 at 1.] Relevance is construed very broadly for discovery purposes, however, and such information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1). The documents sought here satisfy that broad definition. Defendants also argue that "this request may call for documents that are not within [Defendants'] possession or control." [Dkt. 52-3 at 2.] But, as

discussed at the discovery conference, Plaintiff is only seeking discovery with regard to

Defendant Officers' employment with the City and the IMPD.[4] [Dkt. 63 at 9.]

"Subject to and without waiving these objections," Defendants provided a partial answer.

[Dkt. 52-3 at 2.]

> Defendants produced five performance evaluations when responding to Plaintiff's second request for production. This production included the 2018 and 2020 performance evaluations of Officers Guynn and Rossman. It also included the 2018 performance evaluation of Officer Raisovich. These evaluations show how Defendant Officers were evaluated during the year that Plaintiff's claims arose and how two of these officers were evaluated two years later.
>                                       . . .
> Defendants also produced complaints made against Defendant Officers when responding to Plaintiff's second request for production. They produced the only document concerning discipline Defendant Officers received and they produced a document showing coaching Officer Rossman received from IMPD. Defendants then produced documents gathered during the internal affairs investigation of Daniels's in-custody death on September 1, 2018.

[Dkt. 59 at 16.] In their opposition to Plaintiff's motion, Defendants state that they "provided

responsive documents in their possession, custody and control that are proportional to Plaintiff's

needs." [Dkt. 59 at 16.] But Defendants also assert that they "are not withholding documents

under an objection. Instead, they are objecting because it is impossible to determine what

documents are responsive at this stage." [Dkt. 59 at 17.] Now that Plaintiff has clarified the

proper scope, Defendants should no longer find this request "impossible" to answer.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Plaintiff's

Second Request for Production No. 1, narrowed as follows: any Firearms Review board reports,

internal investigations, conduct reports, evaluations, write ups, suspensions, demerits, and

citizen's complaints for the Defendant Officers while employed by the City/IMPD. Defendants

---

[4] Plaintiff's counsel is nonetheless reminded to ensure that future requests for production are as specific as possible from the start to avoid this issue. *See* Fed. R. Civ. P. 34(b)(1)(A).

shall shall provide a complete and unequivocal response to the request **within 14 days of this Order**.

### 7. Second Request No. 4

Plaintiff's Second Request for Production No. 4 seeks, "[f]or Stephen Guynn Jr., George Rossman, and Eli Raisovich, the telephone number, telephone provider name, and all available records for cellular telephones used by said officers on September 1, 2018." [Dkt. 52-3 at 3.] Plaintiff moves to compel because "Defendants declined to provide any materials." [Dkt. 52-1 at 4.]

Defendants initially objected to this request as not relevant, not proportional, unduly burdensome, overly broad, not limited in time and scope, seeking documents that will reveal personal and private information, ambiguous, seeking documents not within Defendants' possession, and not calling for the production of documents. [Dkt. 52-3 at 3-4.] Since then, and pursuant to a recently entered stipulated protective order, *see* [Dkt. 64], Defendants have "disclosed one confidential cellphone record to Plaintiff" which "identifies calls that Officer Rossman made between 6:41 a.m. on September 1, 2018 and 3:19 p.m. on September 2, 2018 as well as Officer Rossman's cellphone number and cellphone service provider." [Dkt. 66 at 1.]

Still, Defendants assert that the information requested by Second Request No. 4 "is not relevant to any party's claims or defenses and it is not proportional to the needs of the case." [Dkt. 52-3 at 3.] Defendants do not elaborate further but, in any case, Plaintiff explains that "these documents are relevant in that they may reveal witnesses to the Defendant officers [sic] statements immediately after the death of Paul Daniels which shed light on the events of the altercation." [Dkt. 63 at 10.] Defendants also object that the request is not limited in time and scope and therefore is unduly burdensome and overly broad. [Dkt. 52-3 at 3.] In their opposition

to Plaintiff's motion, Defendants elaborate that "it calls for records during indefinite periods of time before and after the incident." [Dkt. 59 at 17.] This is untrue; the request's temporal scope is clearly limited to one day--September 1, 2018. Defendants also claim the "request is ambiguous because it calls for the production of all available records from service providers." [Dkt. 52-3 at 4.] The Court disagrees. In fact, the request is much more specific than Defendants assert, as it calls for "all available records for cellular telephones used by [Defendant Officers] on September 1, 2018." There is no ambiguity here about what information Plaintiff seeks.

Additionally, Defendants object to Second Request No. 4 on the ground that "[r]equests for telephone numbers and telephone provider names are not proper requests under Rule 34 of the Federal Rules of Civil Procedure because they do not call for the production of documents." [Dkt. 52-3 at 3.] But surely, any "records for cellular telephones used by said officers on September 1, 2018," are in fact documents. Regardless, Rule 34 permits a request for production to seek "data or data compilations," so, any way Defendants slice it, Plaintiff's Second Request No. 4 is proper. Fed. R. Civ. P. 34(a)(1)(A). Moreover, Defendants go on to address the requested material as "documents" when they assert that they "are not the custodian of these records and this request calls for the production of documents that may not be in their possession." [Dkt. 52-3 at 4.] The Court is not persuaded by this argument. Defendants are more than capable of securing such records, as evidenced by the record recently produced by Officer Rossman. [Dkt. 66 at 1.] Indeed, Defendants are obligated to search for and produce responsive documents within their control as well as documents in the possession of non-parties that Defendants have the right to obtain. Barker, 2020 WL 3618945, at *2. This includes their own cell phone records.

Defendants further argue that "Plaintiff has had the opportunity to depose the officers and ask them about cellphone calls, text messages, and other forms of communication," and that "Plaintiff did not discover any information that suggests that this request will lead to the discovery of probative information during those depositions." [Dkt. 52-3 at 4.] Defendants thus urge the Court to limit discovery under Rule 26 because the information sought "can be obtained from another source that is more convenient, less burdensome, or less expensive," namely, from the aforementioned depositions. [Dkt. 52-3 at 6] (citing Fed. R. Civ. P. 26(b)(2)(C)(i)). Despite admitting that "Defendant Officers had limited recollections of the subject," Defendants additionally claim that "cellphone records are not going to reveal more meaningful information about the conversations that they had if they do not recall those conversations." [Dkt. 59 at 18.] This argument is blatantly illogical, and Plaintiff's request for the production of concrete information that Defendant Officers were unable to recall during deposition is entirely proper. Methods of discovery are not use-it-or-lose-it. *See State Wholesale Grocers, Zeigmund Wholesale Grocery Co.*, 1956 U.S. Dist. LEXIS 4051, at *2 (N.D. Ill. June 21, 1956) ("the pretrial discovery procedures embodied in the Federal Rules of Civil Procedure are not mutually exclusive"). Parties may therefore seek information by deposition, interrogatory, or request for production, so long as doing so does not become "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i).

For these reasons, Plaintiff's Motion to Compel a response to Plaintiff's Second Request for Production No. 4 is **GRANTED** in accordance with the parties' protective order. Defendants shall provide a complete and unequivocal response to the request **within 14 days of this Order**.

### 8.   Second Request No. 7

Plaintiff's Second Request for Production No. 7 seeks "[c]opies or printouts of any databases, websites, or computer resources accessed by Stephen Guynn Jr., George Rossman, and Eli Raisovich, individually or together, on September 1, 2018. This includes but is not limited to the IPD Interact system and any other IPD systems." [Dkt. 52-3 at 5.] Plaintiff moves to compel because "Defendants declined to provide any materials." [Dkt. 52-1 at 4.]

Defendants initially objected to the request as ambiguous, not relevant, not proportional, not leading to the discovery of admissible evidence, and seeking to invade Defendant Officers' privacy. [Dkt. 52-3 at 6.] In their opposition to Plaintiff's motion, however, Defendants explain that, during the discovery conference, the parties agreed to narrow this request "to documents concerning searches Defendant Officers performed to gather information about Paul Daniels on September 1, 2018." [Dkt. 59 at 20.] The Court finds this appropriate. Defendants go on to confirm that, because "Defendant Officers did not know Daniels's name when they encountered him on September 1, 2018," the "Defendant Officers could not have searched for information about Daniels." [Dkt. 59 at 21.] They add that "IMPD has confirmed that Defendant Officers did not perform searches for Daniels using its search tools on September 1, 2018." [Dkt. 59 at 20-21.] Accordingly, Defendants' unequivocal assertion that they do not possess any responsive documents means there is no longer a discovery dispute here. Plaintiff's Motion to Compel with respect to Second Request No. 7 is therefore **DENIED AS MOOT**.

### 9.   Second Request No. 8

Plaintiff's Second Request for Production No. 8 seeks "[c]opies or printouts of any emails, SMS, texts, and other electronic written communications sent or received by Stephen

Guynn Jr., George Rossman, Eli Raisovich on September 1, 2018." [Dkt. 52-3 at 6.] Plaintiff

moves to compel because "Defendants declined to provide any materials." [Dkt. 52-1 at 4.]

Defendants initially objected to the request as ambiguous, not relevant, not proportional,

overly broad, unduly burdensome, seeking to reveal personal and private information not subject

to discovery, and able to be obtained through less burdensome means. [Dkt. 52-3 at 6-7.] In

opposition to Plaintiff's motion, however, Defendants state that "Defendant Officers have

confirmed that they do not have any responsive documents." [Dkt. 59 at 22.]

Accordingly, Defendants' unequivocal assertion that they do not possess any responsive

documents means there is no longer a discovery dispute for the Court to resolve. Plaintiff's

Motion to Compel with respect to Second Request No. 8 is therefore **DENIED AS MOOT**.

### B.  Plaintiff's Interrogatories

There are six interrogatories at issue. Governed by Federal Rule of Civil Procedure 33,

interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R.

Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Any "grounds for objecting

to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4); *see Rowe v. Finnan*,

*2013 WL 3188731, at *2 (S.D. Ind. June 21, 2013)* ("objections to interrogatories must be

specific and supported by detailed explanation as to why interrogatories, or a class of

interrogatories, are objectionable.").

Before assessing each outstanding interrogatory, the Court will address three of

Defendants' overarching objections. First, Defendants object to Plaintiff's Interrogatories Nos. 8,

13, 17, and 22 as ambiguous because they "refer[] to the term 'the incident' without defining this

term or identifying what it is referring to" and Defendants are thus "unable to identify what

Plaintiff is referring to." [Dkt. 52-4 at 15.] This is objectively untrue, however; in the "Definitions" section of the interrogatories, Plaintiff unambiguously and unequivocally defines "Incident" as the "police encounter and death of Paul Daniels on September 1, 2018." [Dkt. 59-1 at 4.] The Court will therefore not address this misrepresentation further.

Second, Defendants object to Interrogatories Nos. 8, 11, 13, 17, and 22 as improper attempts to substitute for a deposition. As noted above, however, methods of discovery are not mutually exclusive, and so long as the discovery is not "unreasonably cumulative or duplicative," Fed. R. Civ. P. 26(b)(2)(C)(i), parties may seek the information by deposition, interrogatory, or request for production. *See State Wholesale Grocer*, 1956 U.S. Dist. LEXIS 4051, at *2; *see also* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.* § 2253 (3d ed. 2017) ("a party need not elect between Rule 36 and the other rules and it may use the various devices at the same time."). As such, the Court will not limit Plaintiff's interrogatories on this ground.

Third, Defendants object to all of Plaintiff's Interrogatories on the ground that Plaintiff served more than the 25 written interrogatories permitted by Rule 33(a), and state they "shall only provide the first piece of information called for in Plaintiff's remaining numbered interrogatories because all additional subparts and requests for distinct information constitute separate interrogatories." [Dkt. 52-4 at 13.] As noted, Rule 33 permits parties to serve any other party with "no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). Importantly, "[t]his limitation is not meant to prevent needed discovery, but to provide some judicial scrutiny before parties make potentially excessive use of this discovery device." *Fair Housing Center of Central Indiana, Inc. v. Welton*, 2019 WL 2422594, at *3 (S.D. Ind. June 10, 2019) (internal quotation omitted) (citing *Illiana Surgery & Med. Ctr. LLC v.*

*Hartford Fire Ins. Co.*, 2008 WL 5111358, at \*2 (N.D. Ind. Dec. 1, 2008)). However, Rule 33 "does not define 'discrete subparts,' so courts have interpreted what constitutes a subpart in various ways." *Bell v. Woodward Governor Co.*, 2005 WL 3829134, at \*1 (N.D. Ill. June 30, 2005). Courts within the Seventh Circuit "often follow the rule that each subpart of an interrogatory is treated as an individual interrogatory unless it is 'logically or factually subsumed within and necessarily related to the primary question.'" *Fair Housing Center*, 2019 WL 2422594, at \*3 (citing *Slabaugh v. State Farm Fire & Cas. Co.*, 2013 WL 4777206, at \*3 (S.D. Ind. Sept. 5, 2013)). The Advisory Committee on the Federal Rules of Civil Procedure provides the following guidance:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of court (or a stipulation from the opposing party) to serve a larger number. Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. **However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.**

Fed. R. Civ. P. 33, Notes of Advisory Committee on Rules—1993 Amendment (emphasis added).

Here, Plaintiff served 23 numbered interrogatories upon Defendants. [Dkt. 59-1.] Using the above guidance, and after reviewing all 23 interrogatories and their subparts, the Court finds that Plaintiff actually served a total of 24 written interrogatories, which is still within the permissible total; while each interrogatory does include subparts, all are "logically or factually subsumed within and necessarily related to the primary question," except for one.[5] *Slabaugh*,

---

[5] The Court finds that subpart (d) to Interrogatory No. 1, which is not currently at issue, is not necessarily related to the primary question and should be treated as a separate interrogatory. *See* [Dkt. 59-1 at 5]. Otherwise, none of the other subparts constitute discrete subparts that should be counted as separate interrogatories.

2013 WL 477720, at *3. Indeed, most of the interrogatories merely request "the time, place, persons present, and contents" related to a particular communication, and therefore should not be counted as separate interrogatories. Fed. R. Civ. P. 33, Notes of Advisory Committee on Rules—1993 Amendment. For these reasons, Defendants' objections pertaining to the number of interrogatories served are overruled, and Defendants shall provide full answers to each numbered interrogatory and its subparts. Defendants are ordered to supplement their responses to any Interrogatories that were limited in any way on the basis of this meritless objection.

Having overruled each of Defendants' overarching objections, the Court now addresses each outstanding interrogatory in turn.

### 1. Interrogatory No. 8

Plaintiff's Interrogatory No. 8 states as follows:

Do you contend that the Decedent Paul Daniels had physical or medical conditions which contributed to his death? If so state:

    a. Each physical or medical conditions [sic] which you allege caused or contributed to Paul Daniels' death;
    b. The manner in which such acts or omissions caused or contributed to his death;
    c. All facts supporting each such contention; and
    d. The identity of the source of Defendant's knowledge of the fact.

[Dkt. 52-4 at 8.][6] Plaintiff moves to compel because Defendants did "not respond substantively."

[Dkt. 52-1 at 4.]

---

[6] Plaintiff's reply brief contains the following statements: "Plaintiff has asked the Court to compel Defendants respond [sic] to Interrogatory No. 8. This request should be denied," and "Defendants' response to Interrogatory No. 8 is proper." [Dkt. 63 at 12.] Given the context, this is obviously a scrivener's error; it is clear that Plaintiff does in fact wish to compel a response to Interrogatory No. 8. This is not the only such error in Plaintiff's filings, and the Court urges Plaintiff's counsel to proofread his future filings more carefully.

Defendants spill an excessive amount of ink objecting on the grounds that this is a premature contention interrogatory "that places an undue burden on the Defendants." [Dkt. 52-4 at 9; Dkt. 59 at 23.] "The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position." *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009). While Plaintiff's Interrogatory No. 8 clearly falls under this definition, "there is nothing improper about contention interrogatories." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 247 F.R.D. 561, 566 (S.D. Ind. 2007); *see* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"). Further, given that the discovery deadline of July 30, 2021, has long since passed, Plaintiff's Interrogatory No. 8 cannot be premature, and Defendants are obligated to respond to it.

Additionally, Defendants object to Interrogatory No. 8 as ambiguous because it "refers to 'acts or omissions' that are not defined and the Defendants are unable to identify what is being referred to." [Dkt. 52-4 at 9.] Although the interrogatory is carelessly worded, "reason and common sense" indicate that Plaintiff is asking how any contended health conditions caused or contributed to the Decedent's death. *See Solutions Team*, 2021 WL 3022324, at *4 ("'A party responding to a discovery request should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery requests.'") (citing *McKellips*, 305 F.R.D. at 679). Defendants should have reasonably construed this language and produced any responsive information. *Cache La Poudre Feeds*, 244 F.R.D. at 618.

Defendants argue that "this interrogatory calls for speculation and information that is outside the scope of the Defendants [sic] personal knowledge." [Dkt. 52-4 at 9.] In their opposition to Plaintiff's motion, Defendants add that Interrogatory No. 8 is improper because it

"asks for an opinion on a matter that will require expert opinion testimony." [Dkt. 59 at 23.] Defendants assert that they "intend to serve a timely expert report which will address the cause of Daniels' death before their expert disclosure deadline" on September 30, 2021,[7] *see* [Dkt. 18 at 3], and that they "should not be compelled to take a position on the cause of Daniels' death" before that deadline. [Dkt. 59 at 24.] However, because the expert disclosure deadline is quickly approaching, Defendants should be able to articulate their general theories, "even if these theories are not fully developed." *Kartman*, 247 F.R.D. at 566. Moreover, "statements made in a contention interrogatory are not necessarily set in stone and may be supplemented or amended." *McNamara v. City of Chicago*, 1997 WL 102554, at *1 (N.D. Ill. Mar. 3, 1997). In any case, Defendants did not raise this expert testimony objection in their initial discovery responses and thus they may not raise it for the first time in their opposition to Plaintiff's Motion to Compel. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 366 (N.D. Ill. 2005) (waiving an objection made by the defendants for the first time in their response brief).

Defendants also assert that "this request calls for information that is not subject to discovery because it is protected by the attorney work product privilege," and that "Plaintiff is not permitted to discover the mental impressions of counsel." [Dkt. 52-4 at 9.] However, "[c]ommunications between a testifying expert and the party retaining that expert are not privileged." *Chamberlain Group v. Interlogix, Inc.*, 2002 WL 653893, at *3 (N.D. Ill. Apr. 18, 2002) (citations omitted). "Indeed, disclosure of a party's legal position and contentions to a testifying expert is not protected by the attorney-client privilege," and "an attorney's mental impressions communicated to a Rule 26(a)(2) expert are not protected by the work-product

---

[7] Plaintiff asserts that Defendants did not timely disclose this expert pursuant to the parties' Case Management Plan. [Dkt. 63 at 13.]

doctrine." *Id.* (citations omitted). This interrogatory properly asks for Defendants' contentions, not privileged communications about those contentions.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Interrogatory No. 8. Defendants shall provide a complete and unequivocal **within 14 days of the date of this Order**.

### 2. Interrogatory No. 11

Plaintiff's Interrogatory No. 11 states as follows:

Was Stephen Guynn Jr., George Rossman, and Eli Raisovich ever given training [regarding] positional asphyxia? If so, for each defendant please provide:

    a. The date(s) and location of this training;
    b. The topics/information covered;
    c. The name(s) of the person(s) involved in the training; and
    d. Identify any written materials used in the training.

[Dkt. 52-4 at 13.] Defendants initially object to this interrogatory as an improper substitute for a deposition and because Plaintiff served more than 25 interrogatories. [Dkt. 52-4 at 13.] "Subject to and without waiving these objections," Defendants stated that "yes[,] the officers did receive training on positional asphyxia." [Dkt. 52-4 at 14.] Plaintiff now moves to compel because Defendants "provide no supporting information." [Dkt. 52-1 at 4.]

In their opposition to Plaintiff's motion, Defendants argue they should not be compelled to answer because:

[Defendants] have produced documents showing all training Defendant Officers have completed while working for IMPD. These records identify when Defendant Officers completed training. Defendants also produced materials used during an in-service training Defendant Officers attended in 2020. Those materials identify the instructors that taught that course. Defendants produced documents showing how Officer Guynn was trained at IMPD's Training Academy and how Officer Rossman was trained at IPD's Training Academy. These documents include class schedules that identify the dates that training was offered and who led the training.

[Dkt. 59 at 25.] Plaintiff asserts, however, that "Defendants did not even provide a reference to documents they allegedly produced" showing such training. [Dkt. 63 at 13.] Rule 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Further, any "grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). By referencing previously produced documents, Defendants have not fulfilled this requirement. Indeed, Rule 33(d) allows Defendants to provide documents in lieu of an interrogatory response in certain circumstances:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).[8] Defendants had the opportunity to properly invoke Rule 33(d) in their initial interrogatory responses, but chose to provide nothing other than a single statement that the Defendant Officers did receive training on positional asphyxia. Then, in their opposition to Plaintiff's motion, Defendants still failed to invoke Rule 33(d) other than mirroring one sentence of its language that "[t]he burden of receiving these records is the same for the Defendant as it is for Plaintiff." [Dkt. 59 at 25.] And, in any event, responses to interrogatories must be answered "by the party to whom they are directed" and signed by "[t]he person who makes the answers."

---

[8] Reliance upon Fed. R. Civ. P. 33(d) requires, at a minimum, identification of specific pages, by Bates number, from which the interrogating party can locate and identify the responsive information as readily as the responding party could.

Fed. R. Civ. P. 33(b)(1), (5). Thus, Defendants' opposition brief does not constitute a proper answer.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Interrogatory No. 11. Defendants shall provide a complete and unequivocal response **within 14 days of the date of this Order**.

### 3. Interrogatory No. 13

Plaintiff's Interrogatory No. 13 states as follows:

State the name, address and job title of City of Indianapolis employee(s) who saw or came in contact with the Stephen Guynn Jr., George Rossman, or Eli Raisovich after the incident and the nature and extent of any conversations between said employee(s) and the Stephen Guynn Jr., George Rossman, and Eli Raisovich.

[Dkt. 52-4 at 15.] Plaintiff moves to compel because "Defendants decline to provide the information." [Dkt. 52-1 at 4.]

Defendants argue for the first time in their opposition to Plaintiff's motion that Interrogatory No. 13 seeks information that "is duplicative of questions covered during Defendant Officers' deposition." [Dkt. 59 at 27]. Because Defendants did not raise this argument in their initial discovery response, it is waived. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. at 366. Similarly, Defendants' arguments regarding relevancy and proportionality are overruled as boilerplate objections because they provide no reasoning to support their contentions. *Novelty*, 265 F.R.D. at 375.

Defendants further assert that this interrogatory is not limited in time or scope and is therefore overly broad and unduly burdensome. [Dkt. 52-4 at 15.] Defendants explain that "it calls for information about every employee of the City of Indianapolis whom [sic] saw or came

into contact with the defendant officers after this undefined incident"[9] and seeks "information about the nature and extent" of every such conversation. [Dkt. 52-4 at 15.] Plaintiff states that, during the discovery conference, her counsel made clear that Interrogatory No. 13 "is limited to September 1, 2018." [Dkt. 52-1 at 4.] Still, the Court agrees that Interrogatory No. 13 is overly broad because, as Defendants correctly point out, it seems to "call[] for information about the nature and extent of every conversation any employee of the City of Indianapolis has ever had with those officers." [Dkt. 52-4 at 15.] The Court therefore limits Interrogatory No. 13 and instructs Defendants to answer only with regard to conversations about or related to the Decedent and the events surrounding the Decedent's death in IMPD custody.

For these reasons, Plaintiff's Motion to Compel Interrogatory No. 13 is **GRANTED**, as narrowed. Defendants shall provide a complete and unequivocal response **within 14 days of the date of this Order**.

### 4.  Interrogatory No. 17

Plaintiff's Interrogatory No. 17 states as follows:

> If any statements were obtained by you, or on your behalf, from any person concerning the incident referred to in the Plaintiff's Complaint, please state the name, address, occupation of each person whose statement was taken and, if written, the name and address of the person who has custody of it.

[Dkt. 52-4 at 19.] Plaintiff moves to compel because "it is unclear from Defendants' response whether all [responsive information has] been produced." [Dkt. 52-1 at 5.]

Defendants stated that they "have produced statements taken during the City's investigation of the events underlying the arrest of Paul Daniels. The name of the people

---

[9] Again, Plaintiff included a definition for the "incident" at the beginning of her interrogatories. *See* [Dkt. 59-1 at 4].

providing those statements is identified in the statements." [Dkt. 52-4 at 20.] In their opposition to Plaintiff's motion, Defendants add that "the answer to Interrogatory No. 17 could be derived by reviewing the statements that IMPD gathered during its investigation of the in-custody death of Paul Daniels." [Dkt. 59 at 28.] Plaintiff contends that, while "Defendants answered that they had taken statements," they failed to provide further details. [Dkt. 63 at 14-15.] As with Interrogatory No. 11, by referencing previously produced documents in this way, Defendants again failed to properly invoke Rule 33(d) and ignored the requirements of Rule 33(b), making their response improper.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Interrogatory No. 17. Defendants shall provide a complete and unequivocal response **within 14 days of the date of this Order**.

### 5.   Interrogatory No. 18

Plaintiff's Interrogatory No. 18 states as follows: "[h]as Defendant at any time administered drug testing to Stephen Guynn Jr., George Rossman, and Eli Raisovich? If so, please provide the dates of testing, identify all persons and entities involved in testing, and state the results of each such test by date." [Dkt. 52-4 at 20.] Plaintiff moves to compel because Defendants "declined to produce any responsive material." [Dkt. 52-1 at 5.]

Defendants initially objected to this interrogatory as ambiguous, not relevant, overly broad, unduly burdensome, and because Plaintiff served more than 25 interrogatories. [Dkt. 52-4 at 20.] However, pursuant to the stipulated protective order, *see* [Dkt. 64], Defendants have since disclosed to Plaintiff "the results of the drug tests that [Defendant Officers] took before and after September 1, 2018." [Dkt. 66 at 1.] Because of this, there is no longer a discovery dispute at

issue here. Plaintiff's Motion to Compel a response to Interrogatory No. 18 is thus **DENIED AS MOOT**.

### 6. Interrogatory No. 22

Plaintiff's Interrogatory No. 22 states as follows:

Please identify all employees and representatives of the City of Indianapolis who spoke to any representative of the Marion County Coroner's office regarding the incident in which Paul Daniels died? If so, please provide:

    a.   the name, address, and telephone number of each such city employee or representative;

    b.   the name, address, and telephone number of each Marion County Coroner employee they spoke to;

    c.   Details of what was said; and

    d.   copies of all communications and reports exchanged.

[Dkt. 52-4 at 22-23.] Plaintiff moves to compel because "Defendants have refused to identify all such persons." [Dkt. 52-1 at 6.]

Defendants object that "this interrogatory calls for the production of information that is not subject to discovery because it is protected under the attorney work product and attorney client communication privileges." [Dkt. 52-4 at 23.] Defendants provide no further explanation as to how the requested material is privileged. Accordingly, this objection is overruled. *Novelty*, 265 F.R.D. at 375; *see* Fed. R. Civ. P. 26(b)(5)(A).

Additionally, Defendants argue that the interrogatory "seeks information that is not relevant to any party's claims or defenses." [Dkt. 52-4 at 23.] Plaintiff counters that "[t]he coroner's field investigation report states that a number of IMPD employees were spoken to during the Coroner's field investigation." [Dkt. 52-1 at 5.] Plaintiff continues:

This information is relevant because the Coroner's field report states that a field investigator was at the scene of Paul Daniels' death on September 1, 2018 and spoke to IMPD representatives. The field report does not disclose the names of the IMPD representatives, but does set forth what they said. The reported statements in the field report were at odds with the deposition testimony of the Defendant officers

regarding the appearance of the decedent after restraint, police actions, and the methods of restraint used. Therefore the identities of IMPD personnel who made the statements were very relevant and likely to lead to admissible evidence.

At deposition, all of the officers and the medical examiner who autopsied Paul Daniels denied any knowledge of who made statement [sic] to the Coroner's field investigator. Plaintiff should be given a proper verified and signed response from the City of Indianapolis regarding knowledge of the identities of any IMPD representatives who communicated with the Coroner's office field investigator at the scene of Paul Daniels' death on September 1, 2018.

[Dkt. 63 at 16-17.] Taking this into account, the Court agrees with Plaintiff that the information sought satisfies the broad definition of relevance applicable in the discovery context.

Defendants also argue that Interrogatory No. 22 is overly broad and unduly burdensome because "the City of Indianapolis employs thousands of people." [Dkt. 52-4 at 23.] But, given the circumstances of the case and Plaintiff's additional context, most of those "thousands of people" are entirely irrelevant here. There are logically only a handful of employees that the City should have to consult to properly answer this interrogatory. Defendants have in no way established how doing so constitutes an undue burden.

For these reasons, Plaintiff's Motion to Compel is **GRANTED** with respect to Interrogatory No. 22. Defendants shall provide a complete and unequivocal response **within 14 days of the date of this Order**.

### C. Attorney's Fees

Finally, Plaintiff asks the Court to award her attorney's fees in light of Defendants' conduct throughout the discovery process. [Dkt. 52-1 at 6-7; Dkt. 63 at 17.] Rule 37 provides the following:

If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the

32

party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(A). If the motion to compel is instead granted in part and denied in part, a court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

Plaintiff may file a motion for attorney's fees **within 14 days of the date of this Order**. The parties shall address the issue of the appropriate apportionment of fees in their briefing of the fee motion, taking into account that, although Plaintiff's Motion to Compel is being granted in part and denied as moot in part, the denials are in large part because Defendants produced the requested materials or otherwise resolved the dispute subsequent to the filing of the motion.

### IV.   Conclusion

For the reasons and to the extent set forth above, the Court **GRANTS IN PART** and **DENIES AS MOOT IN PART** Plaintiff's Motion to Compel. [Dkt. 52.] Specifically, the motion is denied as moot with regard to Plaintiff's First Request for Production No. 11, First Request for Production No. 12, Second Request for Production No. 7, Second Request for Production No. 8, and Interrogatory No. 18; the motion is granted as narrowed with regard to Plaintiff's First Request for Production No. 4, Second Request for Production No. 1, and Interrogatory No. 13; and the motion is granted in full with regard to all remaining requests.

Defendants are hereby ordered to provide complete and unequivocal responses in accordance with this Order **within 14 days of the date of this Order**.

SO ORDERED.

Dated:  18 OCT 2021

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

33

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.