IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF PAUL DANIELS, by<br>Personal Representative Kay Stover,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF INDIANAPOLIS and<br>INDIANAPOLIS METROPOLITAN<br>POLICE DEPARTMENT,<br><br>STEPHEN GUYNN JR.,<br><br>GEORGE ROSSMAN, and<br><br>ELI RAISOVICH,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:20-cv-02280-JRS-MJD |

**PLAINTIFF'S MEMORANDUM IN OPPOSTION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, by counsel, respectfully offers the following memorandum of fact and law in

opposition to Defendants' motion for summary judgment. Defendant Officers argue they are

entitled to qualified immunity. However, factual differences between the testimony of Defendant

Stephen Guynn and fellow Indianapolis Metropolitan Police Department officers give rise to material

questions of fact which prevent summary judgment. Construing the facts and inferences in the light

most favorable to non-movant Plaintiff shows the Defendant Officers violated IMPD General Orders

and training, and the force that they used on Mr. Daniels was objectively reasonable, violating Mr.

Daniels clearly established rights. The City is also liable because it's records show a clear pattern of

injuries to persons with mental instability by IMPD officers over a multi-year timeframe,

1

demonstrating indifference and failure to properly train officers and maintain policies to avoid unnecessary harm. Plaintiff's exhibits in support as cited herein are attached.

## I.   STATEMENT OF FACTS

Paul Daniels was born on 11-20-1952. In 1970 Paul was a freshman at Lincoln University in Jefferson City Missouri, and had just been elected freshman class president. Paul played several instruments and enjoyed basketball. Ex. A, Stover Aff., para. 2.

On January 14, 1971, a group of young men attacked Paul Daniels near the Lincoln University, leaving him with brain injury and mental issues. *Id.*, para. 3. Paul Daniels was forced to drop out of school because of his mental disability. *Id.* Eventually Paul's family had to take him in and care for him. *Id.* After his injury, Paul did not like to be touched, and could respond aggressively. *Id.*, para. 4. On September 1, 2018, at age 65, Paul Daniels was living with sister Kay Stover, where she had been taking care of Paul after their other sister died. *Id.*, para. 5. That morning Paul wandered away from home on foot, which he had never done before. *Id.* He was wearing one shoe. *Id.*

At 11:09 am On September 1, 2018 Officer Steven Guynn was dispatched to check on the welfare of a black male who was walking in and out of traffic. Ex. B, Guynn Deposition, pg. 26 lines 6-14. Officer Guynn arrived at the intersection of 56th Street and Cooper Rd. and stopped at the traffic light. He observed a subject matching the description staggering in and out of traffic. *Id.*, pg. 30 lines 2-12. Officer Guynn pulled up behind the black male, later identified as Mr. Paul Daniels, and parked his patrol car. *Id.*, pg. 31 lines 5-13. After a short physical altercation, Officer Guynn took Daniels to the ground in the grass beside the road, cuffed him and called in "mild resistor" at 11:20:11. *Id.*, pg. 97 – 98.

2

Officer Rossman arrived at the scene between 11:20 and 11:22am.  Ex. C, Rossman Deposition, pg 10 line 18 – 20. Guynn Deposition, pg. 98 lines 5 -7  According to Off. Rossman, Off. Guynn had Daniels handcuffed prone on stomach when Rossman arrived on scene. Rossman Deposition, pg. 19 lines 4 – 12.  Daniels remained cuffed prone on ground on his stomach when. Sgt. T. Wilson arrived.  *Id.*, pg. 18 line 23 to pg. 19 line 1.  The officers were holding Daniels handcuffed and shackled prone on stomach because he was kicking and not calm.  *Id.*, pg. 14 lines 2 – 6.  Eventually Daniels became calm and stopped making noise. Guynn Deposition pg. 61 lines 1- 3. Mr. Daniels stopped struggling.  Rossman Deposition, pg. 20 lines 16 – 17.

When Sgt. T. Wilson came on the scene he noted Daniels was still cuffed and shackled on his stomach.  Ex. D, Wilson Deposition, pg. 23 lines 7 - 8. When Sgt. T. Wilson arrived, Off. Guynn was holding Daniels' down with his hands, arms and elbows on Daniels' shoulders from behind.  *Id.*, pg. 53 lines 9 – 19.  Off. Guynn weighed between 285 and 300 pounds at the time he was holding Daniels down. Guynn Deposition, pg. 76 lines 15 – 23

Sgt. T. Wilson gave the following description of the events when he arrived at the scene to Detective Craighill (Wilson  Deposition p 46):

```
20  "DETECTIVE CRAIGHILL: Did you see anything,
21  as you're pulling up, with him fighting or the
22  officers when you pulled up?
23  "SERGEANT WILSON: No. He was facedown,
24  cuffed. Guynn was on his right side. Raisovich
25  was on his left side with more -- I believe just a
        Wilson Depo Page 47
1  hand on him, standing up with a hand on him. And
```

3

2 Rossman was kneeling on the back of his left calf.

3 "DETECTIVE CRAIGHILL: Okay. Nobody was,

4 like, lying across him or anything?

5 "SERGEANT WILSON: No.

6 "DETECTIVE CRAIGHILL: What about Guynn? What

7 was Guynn doing?

8 "SERGEANT WILSON: Guynn was -- had it -- was

9 holding him down -- was physically holding him down

10 with arms and elbows, but not with his entire body

11 weight laying across him.

12 "DETECTIVE CRAIGHILL: And what part of the

13 body is he holding down, Mike; do you remember?

14 "SERGEANT WILSON: I want to say right

15 shoulder, back of the shoulder blades and the --

16 like, the back of the right arm.

Sgt. T. Wilson said he replaced the oversized handcuffs on Mr. Daniels' ankles with leg shackles he brought. Sgt. T. Wilson described to Detective Craighill the following events after the shackles were applied (Wilson Deposition, p 42):

20 "I then told the three guys there, 'Let's roll

21 him over and sit him up so we don't get into

22 positional asphyxiation issues.' They started

23 giving him commands saying, 'Hey, roll over, roll

24 over.' He wasn't responding.

25 "They rolled him over physically, sat him up.

        Page 43

1 His head tips forward. I believe Officer Raisovich

4

```
 2 said is he -- 'Is he breathing?'
 3 "I pushed his head back, went to reach for a
 4 pulse, and at that point he was -- he started
 5 taking breaths. And he was breathing on his own,
 6 very short and shallow about every four to five
 7 seconds in what appeared typically of -- he gave
 8 the impression of an opiate overdose. The
 9 breathing was slow and labored.
10 "So that was on the initial impression that
11 that's what it was. So when we sat him up, we kept
12 his head tilted forward and waited for the medics
13 to get here."
```

According to Medical Examiner Field Deputy Report, she was told when officers rolled Mr. Daniels over they indicated that the decedent was pale, lips were discolored and the decedent began having difficulty breathing.  Ex. E, Field Deputy Report, page 4, "Terminal Episode", para 2.   Off. Guynn called by radio for the ambulance immediately when Daniels was set up and unresponsive. Wilson Deposition, pg. 26 line 2 - 9.  He made the call at 11:27:04.  Ex. F, Affidavit of Craighill.   At that point at least 5 minutes had passed since Officer Rossman arrived on scene, during which Mr. Daniels had been kept restrained on his stomach and held by the officers.

In their depositions, the Defendant Officers did not state they took Mr. Daniels' pulse or made any other efforts to resuscitate Paul Daniels before the ambulance arrived once they recognized he was unresponsive.

Officer Rossman and Sgt. T. Wilson, only say they saw Mr. Daniels prone on his

Stomach on the ground.  They did not testify that he was ever on his side.  Officer Guynn disputes

this and claims he had Daniels on his side "90 plus percent" of the time because of concern about

positional asphyxiation.  Guynn Deposition, pg. 59 lines 8 – 12.  Officer Guynn specifically

claims Mr. Daniels was on his side when Sgt. T. Wilson arrived.  *Id.* pg. 60, line 23-25.  Officer

Guynn claims when Daniels was first taken down and cuffed he was put on his side.  Guynn

Deposition, pg. 49 lines 5 – 7 and pg. 51 – 52.  Witness April Woodson saw Daniels initially

handcuffed and say he was not placed on side at that time.  Ex. G, Woodson Deposition, pg. 12

line 13 to pg. 13 line 1.

The possibility of causing an inability to breath by keeping a restrained person on their

stomach for a period time has long been recognized.   The risk of death from employment of

restraint in the face down prone position was warned about in a 1995 Department of Justice

advisory bulletin titled, "Positional Asphyxia – Sudden Death".  Ex. G.  Drawn from a report

prepared by the International Association of Chiefs of Police for the National Institute of Justice,

it advises in part, "To help minimize the potential for in-custody injury or death, officers should .

. . As soon as the suspect is handcuffed, get him off his stomach".  *Id.*  This bulletin was sent to

police departments around the country, and has been re-released several times.

Section III of IMPD General Order 8.1 (Ex. I) describes the risk of positional asphyxia

and the measures to be taken to avoid it.  It specifically states:

"III. Positional Asphyxia

A. Officers must be aware of the warning signs that could result in death by positional
   asphyxia. A subject placed on their chest or stomach, with the legs and arms
   restrained behind the back, may have difficulty breathing, leading to serious injury or
   death.

    1. Officers should avoid leaving any prisoner on their chest or stomach for any
       period of time longer than is absolutely necessary, regardless of the type of
       restraint used.

.